LORITAN INVESTMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 33768.   Promulgated January 29, 1931.

*Prescott W. Cookingham*, for the petitioner.
*L. A. Luce, Esq.*, for the respondent.

OPINION.

ARUNDELL: The evidence is clear that petitioner loaned to the Carlton Consolidated Lumber Co. in cash, $1,503,180.59. It is also established that none of this money was ever repaid. The sole point on which the parties disagree is as to the year in which the deduction may be taken. The petitioner asks for its allowance in 1922.

After the agreement of 1919 between the Ladd & Tilden Bank, Ladd Estate Co., petitioner, and the Lumber Co., wherein the bank and the Ladd Estate Co. became preferred creditors, the chances of

petitioner recovering the full amount of its advances to the Lumber Co. became increasingly precarious. It is doubtful, however, whether it could be said that at any particular time the indebtedness became entirely worthless prior to December, 1922. The Lumber Co.'s assets at that time had a book value of about $3,500,000 and its total indebtedness appears to have been less than that figure. The Lumber Co., in December, 1922, entered into a definite agreement for the sale of all of its assets for $1,000,000 gross, out of which there were various selling charges to be paid, leaving a net amount of $747,000 available to the Lumber Co. The Lumber Co.'s indebtedness to the Ladd Estate Co. exceeded that amount. While the actual execution of the contract of sale of the Lumber Co.'s assets did not occur until the early part of January, 1923, both parties to that transaction had definitely and finally agreed on the terms of sale before the close of 1922. The contract was drawn and it then an there became certain that the petitioner could not hope to recover any portion of its loans to the Lumber Co. All these facts were known by petitioner within the year 1922 and the ascertainment of worthlessness is clearly established.

More difficulty arises on the matter of the charge-off of this indebtedness. The petitioner kept only the simplest records, on which were entered only actual cash received and actual cash disbursed, with no profit and loss account ever made up. Under instruction from the Commissioner of Internal Revenue it installed in the year 1923 a proper accounting system, beginning with the year 1908, and in connection with the rewriting of its books in the year 1923 did charge off this amount as of the year 1922. A charge-off of a debt within a reasonable time after the close of the year in which it is ascertained to be worthless, is sufficient to meet the requirements of the statute. *A. W. Blackie*, 2 B. T. A. 747; *Bank of Duplin*, 12 B. T. A. 652. The charge-off here was made in 1923 before the new books for 1922 were closed. The loss was sustained in 1922 and the amount thereof ascertained in 1922, and we believe that what was done in the circumstances may be said to satisfy the provisions of the statute in requiring the charge-off of a debt ascertained to be worthless. Cf. *H. E. Newton et al.*, 7 B. T. A. 1153; *Robert Mitten*, 11 B. T. A. 731; and *Stephenson v. Commissioner*, 43 Fed. (2d) 348, to the effect that where a taxpayer does not keep books, the charge-off provisions of the statute do not apply.

It has been argued in the alternative that the deduction should be allowed under the loss provision of the statute. If this be true the evidence satisfies us that the loss was sustained in the year 1922. Petitioner is entitled to the deduction.

Reviewed by the Board.

*Decision will be entered under Rule 50.*